IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BARRY MCREYNOLDS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 2:05-CV-232-WKW-VPM |
| v. | ) | (WO) |
| | ) | |
| COTTON STATES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This action is before the Court on the Rule 12(b)(6) Motion to Dismiss (Doc. # 36) the Plaintiffs' Amended Bill of Complaint ("Amended Complaint") (Doc. # 35). The Motion to Dismiss was filed by Cotton States Mutual Insurance Company, Bill Philips, Tom Bengston, Mike Herzberg, and Paulette Ellington (collectively "Defendants"). For reasons to be discussed, the motion is due to be granted.

**I. PROCEDURAL HISTORY**

On February 7, 2005, Plaintiff Barry McReynolds ("McReynolds") filed a complaint against Defendants in the Circuit Court of Bullock County, Alabama. On March 11, 2005, Defendants filed a Notice of Removal (Doc. # 1) with this Court. Thereafter, McReynolds twice requested leave to amend his complaint, the second of which was granted by an Order issued on September 27, 2005 (Doc. # 34). Accordingly, Plaintiffs filed an Amended Complaint (Doc. # 35), which included a loss of consortium claim by Plaintiff Retha McReynolds ("Mrs. McReynolds"), on October 31, 2005. The Defendants filed a Motion to Dismiss the Amended Complaint ("Motion to Dismiss") (Doc. # 36) to which plaintiffs filed a responsive brief (Doc. # 38), and Defendants replied (Doc. # 39).

1

## II.   FACTS

For purposes of considering the Motion to Dismiss, it is presumed that the facts alleged in the Amended Complaint are true.  The Amended Complaint alleges the following facts:

From January 1996 through November 13, 1998, McReynolds, a citizen of the State of Alabama, was employed as an adjuster of property damage claims for Defendant Cotton States, a citizen of the State of Georgia.  On November 13, 1998, McReynolds and Cotton States had a disagreement over a continuing working environment, and McReynolds was fired.

In 2001, a party not identified to this Court sued McReynolds in state court over an issue arising from a "dry pond" claim ("Dry Pond Litigation").[1]  During the course of the Dry Pond Litigation, McReynolds' personnel file at Cotton States was subpoenaed and produced.  The records produced pursuant to subpoena were used against McReynolds at trial.  The personnel file allegedly contained numerous false claims and misrepresentations in memoranda inserted by Defendants after McReynolds was fired.  He asserts that altered and falsified documents were inserted to create evidence of wrongdoing that did not exist in the original file.  Furthermore, he says the Defendants knew or should have known that the personnel file contained false information when it was produced.

McReynolds lost the Dry Pond Litigation due, he says, to the fraudulent misrepresentations contained in the personnel file.  Defendants are sued for negligence, wantoness, fraud, libel and slander, and loss of consortium.  McReynolds claims damages in the amount of the compensatory and punitive damages awarded against him in the Dry Pond Litigation, and he claims damage to his reputation and character.  Mrs. McReynolds claims a loss of consortium.

---

[1] The Court has not been informed of the details of the Dry Pond Litigation, including the identity of all the parties or how the allegations were related to McReynolds' employment with Cotton States.

### III.   JURISDICTION AND VENUE

This Court exercises diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, which requires that all defendants be diverse from all plaintiffs and that the amount in controversy be greater than $75,000.[2]  Both Plaintiffs are Alabama citizens and all the defendants are citizens of Georgia. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

### IV.   STANDARD OF REVIEW FOR MOTION TO DISMISS

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.").  In evaluating a motion to dismiss, the Court will accept as true all well-pleaded factual allegations and reasonable inferences drawn from those facts and will view them in a light most favorable to the nonmoving party.  *Hishon*, 467 U.S. at 73; *see also Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).

### V.   DISCUSSION

Defendants argue that because each of Plaintiffs' claims is founded on the publication of documents pursuant to a valid subpoena issued in the Dry Pond Litigation, the disclosure is absolutely privileged.[3]  "An absolutely privileged communication is one in respect of which, by

---

[2] The original complaint sought damages of $20,000,000.00 and the Amended Complaint adds a claim for loss of consortium.

[3] It is axiomatic that in diversity cases federal courts must apply the applicable substantive state law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938).

3

reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously, and is false." *O'Barr v. Feist*, 296 So.2d 152, 156 (Ala. 1974). The determination of whether a communication is privileged is a "question of law to be decided by the court." *Walker v. Majors*, 496 So.2d 726, 730 (Ala. 1986).

In opposition, McReynolds' asserts three arguments. First, McReynolds argues that Defendants were not a party to the Dry Pond Litigation and are therefore not eligible for absolute privilege with respect to communications they published during that Dry Pond Litigation. Second, McReynolds contends that the personnel file was not created in preparation for trial and thus does not qualify for absolute privilege. Finally, McReynolds argues that the published communication was irrelevant to the Dry Pond Litigation, thereby eliminating the absolute privilege. Each issue will be discussed separately, as will the loss of consortium claim.

A.   *Absolute Privilege Extending to Non-Parties*

McReynolds argues that Defendants were not a party to the Dry Pond Litigation and therefore cannot claim the privilege. Alabama law extends the absolute privilege to "parties, counsel, *or witnesses* in the course of judicial proceedings." *O'Barr,* 296 So.2d at 157 (emphasis added). In the Dry Pond Litigation, Cotton States was subpoenaed to produce McReynolds' personnel file and was, therefore, a potential or actual witness. In order to facilitate a forum in which "witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages," Alabama courts extend absolute immunity to non-party witnesses. *Webster v. Byrd*, 494 So.2d 31, 35 (Ala. 1986). In fact, Alabama law extends the absolute privilege to "libelous charges in pleadings, affidavits, or other papers used in the course of the prosecution or defense of an action." *Walker*, 496 So.2d at 729. Thus, the

4

documents published to the trial court by Cotton States, which includes communications by the individual defendants, are protected by the absolute privilege irrespective of whether the Defendants were parties to the Dry Pond Litigation.

B.  *Absolute Privilege Extending to Documents Not Created in Preparation for Litigation*

McReynolds argues that absolute privilege does not apply because the personnel file was not created and kept for purposes of litigation. This argument misses the point. In Alabama, absolute immunity applies to a communication *published* during a judicial proceeding. *Id.* at 729-30 (reiterating that communications *made* during judicial proceedings are absolutely privileged and showing agreement with § 587 of *Restatement (Second) of Torts* (1977), which explicitly states that a party is absolutely privileged to publish defamatory information during judicial proceedings). Thus, although the personnel file was not created and kept in preparation for the Dry Pond Litigation, it is undisputed that the personnel file was published pursuant to the judicial proceeding. Importantly, it is the occasion upon which the communication was made, not the communication's inception, that is relevant to this issue. *See O'Barr*, 296 So. 2d at 156 (the privilege applies by reason of occasion upon which it is made). Accordingly, this Court finds that the personnel file was *published* pursuant to a subpoena related to ongoing judicial proceedings, and that it is immaterial whether such records were created in preparation for litigation.

C.  *Personnel File Was Relevant and Involuntarily Published*

McReynolds' remaining argument is that the publication of the communication was irrelevant to the Dry Pond Litigation and is therefore not entitled to absolute privilege. Absolute privilege "extends only to such matters as are relevant or material to the litigation, or, at least, it does not protect slanderous imputations plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant." *Id*. at 157. However, in

5

evaluating the relevancy, "[t]he question of the relevancy of the communication is a matter for the determination of the court, and the adjudicated cases have established a liberal view in the interpretation of the language used, and all doubts are resolved in favor of its relevancy or pertinency." *Id.* (citing *Adams v. Alabama Lime & Stone Corp.*, 142 So. 424, 425 (Ala. 1932)).

Whether McReynolds objected to the subpoena, or to the admission of the records into evidence on relevance or any other basis, has not been addressed in the filings submitted to this Court. Even if McReynolds objected, a fact to which this Court is not privy, the trial court obviously overruled the objection and admitted the evidence. Thus, because the communication was either not objected to by McReynolds, and in any event was considered relevant by the trial court, this Court applies the liberal view and all doubts (although there are none created by the filings here) are resolved in favor of relevancy. McReynolds' argument as to relevancy fails.

In summary, the personnel files produced in state court pursuant to subpoena are protected by the absolute privilege. Accordingly, as drafted, McReynolds' complaint against all Defendants is due to be dismissed with prejudice.

D.  *Mrs. Reynolds' Loss of Consortium Claim.*

Mrs. McReynolds' loss of consortium claim is a derivative claim. *See Ex parte Dyess*, 709 So.2d 447, 448 (Ala. 1997). Derivative claims are subject to the same defenses applicable to the direct claim. *See Ex parte Progress Rail Servs. Corp.*, 869 So. 2d 459, 462 (Ala. 2003). Having found that the Defendants are absolutely privileged as to the communications in the Dry Pond Litigation, Mrs. McReynold's loss of consortium claim is due to be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss (Doc. # 36) is GRANTED.

2.  Plaintiffs' Amended Bill of Complaint (Doc. # 35) is DISMISSED WITH PREJUDICE.

3.  An appropriate judgment will be entered consistent with this Memorandum Opinion and Order.

Done this 2nd day of June, 2006.

/s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE